U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 2 0 2005

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JAVIER HUMBERTO TAPIA FONTANEZ | DOCKET NO. 1:04 CV 0064<br>SECTION P |
| VS. | JUDGE DEE D. DRELL |
| ROBERT KOSCO | MAGISTRATE JUDGE KIRK |

CONSOLIDATED WITH

| | |
|---|---|
| JAVIER HUMBERTO TAPIA FONTANEZ | DOCKET NO. 1:04 CV 000551<br>SECTION P |
| VS. | JUDGE DEE D. DRELL |
| ROBERT KOSCO | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the Court is a Motion to Dismiss and Alternative Motion for Summary Judgment (Doc. #23) filed by Defendant, Robert Kosco. The record indicates that Plaintiff, **JAVIER HUMBERTO TAPIA FONTANEZ** ("Plaintiff"), was incarcerated at the Federal Prison Camp in Pollock, Louisiana ("FPC Pollock"), but is currently incarcerated in La Tuna, Texas[1]. Plaintiff was granted permission to proceed *in forma pauperis* on January 16, 2004. (Doc. #3)

The Court previously dismissed without prejudice Plaintiff's retaliation claim, and dismissed with prejudice Plaintiff's denial of access to the courts and due process claims. (Doc. #12.) The only remaining claim involves Plaintiff's conditions of confinement, and the only remaining defendant in the consolidated cases is Robert Kosco. (Doc. #12.)

---

[1] According to the defendant (Doc. #23), Plaintiff is currently confined at the Federal Prison Camp in La Tuna, Texas, and is no longer at USP Pollock. However, Plaintiff has not notified the Court that he was transferred from Pollock.

Plaintiff was sentenced on November 15, 2002, in the District of Puerto Rico, to seventy (70) months incarceration and four (4) years supervised probation to follow, for Conspiracy to Possess with Intent to Distribute Heroin in violation of 21 U.S.C. § 846. Plaintiff's complaint was filed under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and the remaining claim involves allegations that Plaintiff's Eighth Amendment rights were violated. Plaintiff complains about the conditions in the Special Housing Unit ("SHU") at the U.S. Penitentiary in Pollock, Louisiana ("USP Pollock"). Specifically, he alleges that Defendant Kosco directed staff at USP Pollock to place him in a room without bedding, water, hygiene items, access to legal research materials in Spanish language, toilet facilities, and phones. Plaintiff claims that he was forced to sleep on a concrete floor with no blanket or pillow.

## Factual Background

Plaintiff arrived at USP Pollock on May 28, 2003. (Doc. #23, Exhibit 1, ¶3.) Plaintiff complained that he should have been transferred to a facility in Florida, and Defendant spoke with Plaintiff about this issue with the assistance of a translator. (Doc. #23, Exhibit 1, ¶4.) After speaking with Plaintiff, the defendant thought it was necessary to have Plaintiff in a more secure setting.[2] Plaintiff was placed in administrative detention at USP Pollock on May 30, 2003.

According to Defendant, administrative detention status is not a punitive status. Rather, it involves restricted conditions of confinement to ensure the safety of inmates or others, the protection of property, or the security or orderly running of the institution. (Doc. #23, Exhibit 1, ¶7.) Administrative detention is also used for inmates who require protective custody, who are

---

[2] A federal prison camp is an unsecure setting where inmates are free to walk between various buildings. (Doc. #23, Exhibit 1, ¶5.)

"holdovers" in route to another institution, and those who are awaiting a hearing before a discipline committee or hearing officer. (Doc. #23, Exhibit 1, ¶7.)

According to Defendant, Plaintiff was in cell 101 in administrative detention status for one day, from May 30, 2003, through May 31, 2003. He was then moved to cell 219 from May 31, 2003, through June 1, 2003. From June 1, 2003, through June 5, 2003, Plaintiff was in cell 218. Cells 218 and 219 are standard cells with a toilet and shower. On June 5, 2003, Plaintiff was removed from the Special Housing Unit and was placed back in the general camp population. (Doc. #23, Exhibit 1, ¶9.)

Therefore, for one day, Plaintiff was in cell 101, a "dry cell," which does not contain a toilet, shower, or running water. (Doc. #23, Exhibit 1, ¶10.) According to Defendant, the "dry cell is utilized when there is a reasonable belief that an inmate has ingested contraband or concealed contraband in his body cavity, and the methods of search specified in 28 C.F.R. §552.11 are inappropriate or likely to result in physical injury to the inmate." (Doc. #23, Exhibit 1, ¶10.) In such situations, the inmate is observed until he has voided the contraband or sufficient time has elapsed to preclude the possibility that the inmate is concealing contraband.

Plaintiff claims that the Defendant directed prison staff to place him in a room without bedding, water, hygiene items, and toilet facilities. However, Defendant avers that he did not advise USP staff in which specific cell to place Plaintiff. (Doc. #23, Exhibit 1, ¶8.) Defendant states that he has never exercised administrative or operational control over the Special Housing Unit of the penitentiary, nor does he have authority to make cell assignments in the Special Housing Unit. (Doc. #23, Exhibit 1, ¶8.) Further, Defendant specifically denies that he ordered plaintiff to be housed without bedding, hygiene supplies, clothing, or access to a toilet. (Doc. #23, Exhibit 1, ¶11.)

3

Defendant states that he understood Plaintiff's placement in cell 101 to be temporary due to crowded conditions in the Special Housing Unit and the fact that the plaintiff could not be placed in a cell with high security inmates. (Doc. #23, Exhibit 1, ¶12.) Defendant states that when the plaintiff requested a bathroom, he was escorted to one nearby. Id. Further, Defendant specifically recalls seeing a mattress and bedding in the plaintiff's cell at all times. (Doc. #23, Exhibit 1, ¶13.) The staff brought the plaintiff drinking water when requested during the one day that he was confined in cell 101. Further, Plaintiff was clothed when seen by Defendant, despite his allegations that he was denied clothing. Id.

Additionally, Defendant submits that he had a Spanish speaking staff member accompany him as a translator when speaking to Plaintiff. (Doc. #23, Exhibit 1, ¶14.) Defendant claims that, while in administrative confinement, Plaintiff made no complaints to Defendant regarding the conditions of his confinement. (Doc. #23, Exhibit 1, ¶15.)

### Subject Matter Jurisdiction

Defendant claims that the Court lacks subject matter jurisdiction over him in his official capacity. Under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), federal officials can be sued in federal court for violating the Federal Constitution. Bivens actions may be brought only against federal agents in their individual capacities. Martinez v. City of Los Angeles, 141 F.3d 1373, 1383 (9th Cir. 1998). The plaintiff states that Defendant acted improperly under the color of law. To the extent that Plaintiff asserts claims against Defendant in his official capacity, those claims should be dismissed for lack of subject matter jurisdiction. However, in the interest of justice, the Court will also analyze Plaintiff's claims as if brought against Defendant in his individual capacity.

4

### Exhaustion

The Defendant claims that Plaintiff failed to timely file complaints with the Bureau of Prisons and, therefore, failed to *timely* exhaust his administrative remedies. Plaintiff filed numerous grievances with the prison that were not addressed by the prison, because they were rejected as untimely. The exhaustion issue was previously addressed by the Court in a report and recommendation to which the Defendant did not object. (Doc. #8, p.4-5.) The district judge adopted those findings (Doc. #12), and they will not be readdressed here. Plaintiff's claims will be reviewed on the merits.

### Conditions of Confinement

The Eighth Amendment provides the standard of scrutiny for a plaintiff's claims of unconstitutional conditions of confinement. See Lewis v. Foti, 1996 WL 175004, *citing* Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). "Conditions within the prison may constitute cruel and unusual punishment in violation of the Eighth Amendment if they result in 'unquestioned and serious deprivation of basic human needs.'" Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Conditions that "cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Id. Routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes. Id. Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

In order to recover for unconstitutional conditions of confinement, the prisoner must show that prison officials acted with "deliberate indifference" to his basic human needs. Wilson v. Seiter, 501 U.S. 294, 303 (1991). Thus, Plaintiff must prove that he has suffered a significant deprivation of a basic human need as a result of the defendant's deliberate indifference. Only deliberate

indifference, "an unnecessary and wanton infliction of pain ... or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Additionally, because the Eighth Amendment prohibits cruel and unusual punishments, not merely cruel and unusual prison conditions, a plaintiff must allege that he suffered "a serious or significant physical or emotional injury resulting from the challenged conditions." Lewis v. Foti, 1996 WL 175004, *quoting* Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.), cert. denied, 114 S. Ct. 393 (1993).

In the instant matter, Plaintiff was placed in administrative detention due to the defendant's concerns that Plaintiff would walk away from the camp. (Doc. #23, p.12.) Plaintiff has alleged that he was without a toilet in his cell, hygiene items, clothing, or bedding. Plaintiff was in a "dry cell" for one day because no other cell was available at the time. While Plaintiff had no toilet in his cell, he has not alleged that he was denied access to a toilet when one was needed. Defendant has come forward with an affidavit stating that Plaintiff was clothed at all times and that he was provided hygiene items. Plaintiff has not contradicted that evidence, nor has he shown that he was deprived of medication, food, or drink. Plaintiff has not established that he was deprived of basic human needs. Even if he could establish that he was deprived of basic human needs, he has failed to show that such alleged deprivations were the result of the defendants' deliberate indifference and were wanton and unnecessary. Furthermore, Plaintiff has failed to establish that he suffered from a serious or significant physical or emotional injury resulting from the challenged conditions. The Court also notes that Plaintiff has not disputed the statements set forth in Defendant's affidavit, and he has failed to show there is a genuine issue for trial.

Finally, the Court notes that, to the extent that Plaintiff seeks to hold Defendant liable for

actions of his subordinates, he has failed to show that Defendant played an "affirmative part" in any alleged misconduct. See Rizzo v. Goode, 423 U.S. 362, 377 (1977) (supervising official does not violate a person's constitutional rights unless he or she has played an "affirmative part" in the alleged misconduct.).

## Conclusion

As noted herein, the Court lacks jurisdiction over Plaintiff's claims against Defendant in his official capacity. However, to the extent that Plaintiff's claims were brought against Defendant in his individual capacity, the undersigned finds that those claims should be dismissed with prejudice as there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law.[3] For the reasons cited herein, it is RECOMMENDED that Defendant's Motion for Summary Judgment (Doc. #23) be GRANTED and that Plaintiff's claims be DENIED AND DISMISSED WITH PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

---

[3] The Court reviewed and relied on the Affidavit submitted by the Defendant and, therefore, treats the Motion to Dismiss under 12(b)(6) as the alternative motion for summary judgment.

7

FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 20th day of September, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE